# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CONNIE CALLAHAN, SALLY FISH,
JOANNA PETRIDOU-FISHER, WAYNE
SPRONG, ARTURO T. TALAMANTE,
KAZ DZIAMKA and ANNE WATERS,

        Plaintiffs,

vs.                                                                    No.  CV 97-1213 SC/LCS

ALBUQUERQUE TECHNICAL
VOCATIONAL INSTITUTE, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Consolidated Motion To

Dismiss or, in the Alternative, for Summary Judgment, filed August 16, 1999 [Doc.

No. 57].  On some issues both sides have submitted material outside the pleadings that I

have not excluded.  On those issues the motion is treated as one for summary judgment.

The following motions are also pending:  Plaintiffs' Motion to Supplement Record, filed

October 15, 1999 [Doc. No. 66]; Plaintiffs' Motion To Strike Affidavit, filed August 31,

1999 [Doc. No 61]; and Plaintiffs' Second Motion To Supplement Record, filed

December 9, 1999 [Doc. No. 74].  For the reasons contained in this opinion, the motion

to dismiss or for summary judgment will be GRANTED IN PART and DENIED IN

PART.  Because of my rulings on the dispositive motion, which were made without

considering the supplemental material or the material sought to be stricken, the remaining motions are MOOT.

## Procedural Background

Plaintiffs are former teachers at Albuquerque Technical Vocational Institute ("TVI").[1]  In their initial state court complaint they challenged being severed from their employment which occurred when their one-year contracts were not renewed for the 1997-98 school year.  Although they received notice of the nonrenewal of their contracts, they alleged (among other things) that their procedural due process rights were violated because TVI refused to give them any reasons for the nonrenewal of their contracts. Thus, Plaintiffs claimed, they had no meaningful opportunity to challenge the decisions to terminate their employment.  TVI removed the case to federal court on the basis that it presented a federal question.  TVI was the sole Defendant at that time.  In due course it filed a motion to dismiss or for summary judgment.  Because of pending arbitration, limited to the question of whether the nonrenewal of Plaintiffs' contracts was arbitrable under a newly-adopted collective bargaining agreement ("CBA") covering TVI teachers, I postponed decision on that motion.  In an opinion dated May 12, 1998, the arbitrator decided that the matters were arbitrable.

Plaintiffs filed their First Amended Complaint on December 23, 1998.  In it they

---

[1]  Pursuant to an unopposed motion, Plaintiffs Arturo T. Talamante and Kaz Dzaimka were dismissed from this lawsuit with prejudice by Order of January 4, 2000.  Count Five pertains only to Plaintiff Talamante, and so it will be dismissed.

name 17 individual Defendants who are TVI officials.  These include the president and

two vice presidents of TVI, seven TVI board officers and members and several others.

Plaintiffs also added several causes of action.  These now number 12.  The causes of

action boil down to four types:  breach of contract claims under state law, procedural due

process claims under 42 U.S.C. § 1983, discrimination and retaliation claims under

42 U.S.C. § 1983 and claims under 42 U.S.C. §§ 1985(2) and 1986.  The latter are based

upon allegations of retaliation for filing this lawsuit.  Plaintiffs filed two more motions to

dismiss or for summary judgment.  The union and TVI planned individual arbitrations for

each Plaintiff.  However, those arbitrations never took place.  Instead, the union and TVI

entered into a settlement agreement.  All motions were withdrawn by Defendants upon

the filing of the present consolidated motion.

### Motion To Dismiss or For Summary Judgment

Defendants seek summary judgment on, or dismissal of, all claims in the amended

complaint.  Summary judgment or dismissal are sought upon differing facts and theories.

These will be discussed in turn.

### Standards For Motion To Dismiss

For purposes of a motion to dismiss, the material factual allegations in the

complaint are considered as true.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969);

Riggs v. City of Albuquerque, 916 F.2d 582, 584-86 (10th Cir. 1990); Dewell v. Lawson,

489 F.2d 877, 879 (10th Cir. 1974).  Only if, after liberal construction of the pleadings,

there appears no possibility that a plaintiff can prove a set of facts which would entitle

him to relief should the motion to dismiss be granted.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Gas-a-Car, Inc. v. American Petrofina, Inc.</u>, 484 F.2d 1102, 1107 (10th Cir. 1973).

## Summary Judgment Standards

Summary judgment is appropriately granted when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." <u>Thrasher v. B & B Chemical Co.</u>, 2 F.3d 995, 996 (10th Cir. 1993); <u>Russillo v. Scarborough</u>, 935 F.2d 1167, 1170 (10th Cir. 1991).  The party moving for summary judgment bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, the opposing party must provide the court with specific facts showing a genuine dispute for trial.  Fed. R. Civ. P. 56(e); <u>Gray v. Udevitz</u>, 656 F.2d 588, 592 (10th Cir. 1981).  A dispute about a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Ingels v. Thiokol Corp.</u>, 42 F.3d 616, 620 (10th Cir. 1994), *quoting* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## Factual Background

The facts, either undisputed or viewed in a light most favorable to Plaintiffs, include the following.  The New Mexico Federation of Teachers ("NMFT"), the exclusive bargaining representative for all full-time faculty at TVI, entered into a CBA

with TVI. The CBA was effective from September 1, 1996 to August 31, 1999. Plaintiffs were members of the full-time faculty bargaining unit covered by the CBA at the time TVI notified them that their faculty contracts would not be renewed.

Each Plaintiff had been employed by TVI for more than three consecutive years pursuant to the one-year contracts of employment. Each Plaintiff signed a one-year Full-Time Faculty Contract for the academic year from September 1, 1996 to August 31, 1997. These individual contracts were subject to the TVI Employee Handbook. To the extent of a specific conflict between, on the one hand, the CBA and, on the other hand, the contracts and/or the handbook, the latter were subject to the CBA.

In May 1997, TVI informed all Plaintiffs in writing that their individual faculty contracts would not be renewed for the 1997-98 school year. No reason was given for these nonrenewals, either at that time or at any time thereafter. The CBA provides a right to file a grievance if an employee believes he or she has been "unfairly or unjustly reprimanded, suspended without pay, demoted or terminated . . .." Def. Ex. A.1 art. 10.4 at 8. The TVI Governing Board Resolution 1994-57 excludes from participation under its Collective Bargaining Policy those employees "who have no reasonable expectation of continued employment . . .." Pl. Ex. 5 at 2. TVI has had a continuous (unwritten) policy not to terminate employees without just cause. Since at least 1989, TVI had never terminated a non-probationary employee without just cause.

Pursuant to the grievance procedure of the CBA, each of the Plaintiffs grieved TVI's decision not to renew their contracts to the Vice President of Instruction, Janice

Micali, either individually or through a "class grievance" submitted by the NMFT. All Plaintiffs asked for the reasons that justified their individual nonrenewals. TVI denied each of the grievances, again without any explanation of the reasons for the nonrenewals and without revealing any of TVI's evidence. Each Plaintiff appealed the denial to Karen Willis, the then Associate Director of Human Resources. TVI held what it calls Level 3 meetings in accordance with the CBA. As a result of these meetings, Ms. Willis determined there were no violations of the CBA and upheld the Level 1 and 2 denials of the grievances. Plaintiffs maintain that although these so-called meetings were held, Level 3 requires that the Director of Human Resources conduct a bona-fide meeting, complete with evidence, in an attempt to resolve the grievance. TVI never submitted any reason for its actions and, instead, took the position that a nonrenewal of a contract was not a termination action within the meaning of the CBA and was, therefore, not grievable.

Each Plaintiff's employment with TVI ended upon the expiration of his or her faculty contract on August 31, 1997. On September 2, 1997, TVI and NMFT, the exclusive representative of Plaintiffs under the CBA, made a joint request for arbitration limited to the issue of whether Plaintiffs were entitled to arbitrate the nonrenewal of their faculty contracts. An arbitration was conducted on the sole issue of whether the actions taken by TVI, which resulted in the lack of continued employment of the Plaintiffs, were arbitrable through the grievance procedure set forth in Article 7 of the CBA. By decision issued May 12, 1998, the arbitrator determined that the "action of the Employer with regard to the termination of employment of the eight Grievants . . . is arbitrable." Def.

Ex. A.24 at 18.

After the first arbitration, demands for individual arbitrations for the grievants were filed by the union and TVI. On April 30, 1999, prior to arbitration on the merits of Plaintiffs' grievances, TVI and NMFT executed a Settlement Agreement fully resolving all matters between them relating to TVI's failure to renew Plaintiffs' contracts. The settlement included the NMFT grievance, the Plaintiffs' grievances and all issues related to this lawsuit. It provided for reinstatement of three of the Plaintiffs, and it established a limited fund to be shared by all grievants to compensate them for back pay. However, the reinstatement and back pay fund portion of the settlement was subject to voluntary participation in the settlement by the grievants within 20 days requiring them to sign full releases. Plaintiffs were not included in these negotiations, and they were not consulted about the settlement. The demands for arbitrations were withdrawn without the knowledge or permission of Plaintiffs. All but two of them did not elect to participate in the settlement. (Kaz Dziamka and Arturo Talamante elected to participate, and they have been dismissed.) In accordance with the terms of the settlement, TVI and NMFT executed formal amendments to the CBA on June 21, 1999. Pursuant to these amendments, TVI instituted a tenure policy for full-time faculty members expressly requiring "just cause" for disciplinary action taken against members of the collective bargaining unit who have completed seven terms of full-time employment.

**Discussion**

**A. Contract Claims - Absence of Evidence of Breach?** In Counts Ten and

Eleven Plaintiffs allege that Defendant TVI breached their express and implied employment contracts and breached the covenant of good faith and fair dealing by discharging them from their employment without just cause and without following the procedures set forth in the CBA. TVI contends that Plaintiffs' contract claims must fail because their contracts were not breached. It argues that the teachers were not terminated; rather, their one-year contracts simply were not renewed at the end of the year. Further, TVI argues that Plaintiffs received all they were entitled to under their employment contracts, which was the 90-day notice of nonrenewal provided in the employee handbook. It is undisputed that TVI complied with the 90-day notice requirement. According to TVI, because the CBA does not specifically address nonrenewals, there is no conflict between it and the contracts and handbook. Thus, it reasons, the CBA does not apply to this situation, or, if it does, it does not provide any substantive right to continued employment, only a right to a procedure.

The individual faculty contracts and the employee handbook provide a just cause standard only for "terminations" during the contract year, and for "nonrenewals" they provide merely a 90-day notice period:

> The Instructor shall not be terminated during the term of this Contract, except for inefficient performance, insubordination, breach of this Contract or other good and sufficient reason including those referenced in the *Employee Handbook.*

Full-Time Faculty Contracts, Def. Exs. A.4 - A.10 ¶ 6.

> [T]he term of employment shall be each fiscal year (or academic year for instructional personnel), although there is

> no commitment expressed or implied to renew or extend the employment of any employee. No termination during a fiscal year (or academic year for instructional personnel) shall be made except . . . for cause as provided in Section IX of this handbook. Notice of nonrenewal of employment shall be given to employees not less than 90 days prior to the beginning of the next fiscal year (or academic year for instructional personnel).

Employee Handbook, Def. Ex. A.2, § 3.03 at 12-13.

The CBA controls, however, in the event of a specific conflict. The Full-Time Faculty Contracts state: "To the extent any provision in this contract is specifically contrary to any provision of the Collective Bargaining Agreement, the Collective Bargaining Agreement will govern." Def. Exs. A.4 - A.10 ¶ 5. The CBA contains this language: "If any Institute policy, regulation or directive is in specific conflict with any provision of this Agreement, the Agreement shall control." Def. Ex. A.1 § 5.1 at 3.

The CBA contains the following language in Article 10 entitled "Employee Rights:"

> 10.4 An employee who believes that the employee has been unfairly or unjustly reprimanded, suspended without pay, demoted or terminated may file a grievance in accordance with the Agreement's grievance procedure.

CBA, Def. Ex. A.1 at 8.

Plaintiffs contend that they were "terminated" within the meaning of Section 10.4 of the CBA. Further, they argue that TVI lost when it asserted a distinction between nonrenewal and termination during the arbitration, and therefore that it is collaterally estopped from making the same argument in this litigation. Defendants counter that the

arbitrator's ruling did not rely upon the distinction between termination and nonrenewal.

Rather, they argue, given that his role was limited to determining arbitrability, he simply

concluded that the grievances were arbitrable because the Plaintiffs "believed" they were

terminated.

The arbitrator's decision can be fairly interpreted as equating nonrenewal with

termination, as requiring TVI to give reasons for termination and as resolving a supposed

conflict between the employee handbook and the CBA by holding that the CBA

governed.  In deciding that the Plaintiffs could grieve their nonrenewals, the arbitrator

stated:  "[t]he employment relationship in this case is considered by the undersigned to

have been 'put to an end', and made 'to cease'."  Def. Ex. A.24 at 14-15.  He also

indicated that under the CBA Plaintiffs were entitled to more than just the 90-day notice

of nonrenewal:

> To allow separation from employment during the contract
> year, but not at the end of the contract year (non-renewal) is a
> concept of appeal rights which is viewed by the Arbitrator as
> minuscule and non-consequential.  Under such a concept,
> management's desire to discharge employees perceived by
> some as difficult, or to layoff employees outside seniority or
> other provisions of the CBA, or otherwise rid themselves of
> the necessity to justify its serious personnel actions through
> an independent review process is totally unreasonable.  A few
> more months salary and management is rid of the employee
> without the time and costs of appeal procedures simply by
> waiting until the end of the individual contract year.

Def. Ex. A.24 at 15.  He resolved his perception of the conflict between the individual

contracts and the employee handbook, on the one hand, and the CBA, on the other, in this

way:

> Counsel for the Employer's best and good efforts
> notwithstanding, his reasoning is found lacking when he relies
> on procedures in the previous Employee Handbook to claim
> there has been no change in the practice of "at-will"
> employment. Conflicting policies such as remain in the
> Employee Handbook on contract non-renewal are found to be
> invalidated by the wording of the CBA in Section 5.1.

Def. Ex. A.24 at 16.

Whether or not the arbitrator's decision is given preclusive effect, my analysis of the issues yields the same result. I find that Plaintiffs were terminated within the meaning, and arguably in breach, of the CBA. In my view, the CBA is in specific conflict with the individual contracts and the employee handbook on these points, and I conclude that the CBA therefore controls. Thus, this aspect of the motion for summary judgment will be denied, and the contract claims will not be dismissed on this basis.

**B. Due Process Claim.** In Count One, Plaintiffs claim that their terminations were in violation of their constitutional right to procedural due process contained in the Fourteenth Amendment to the United States Constitution. Defendants argue that the due process claim must be dismissed because Plaintiffs had no legitimate expectation of continued employment at TVI and therefore they had no property interest in their jobs. The individual Defendants also argue that they are entitled to qualified immunity in their individual capacities on the due process claim because even if Plaintiffs did have a property right in their continued employment, that right was not clearly established. Defendants also argue that Plaintiffs were afforded all the process that was due to them

because TVI followed the procedure contained in the CBA.

　　　　　*1. Property interest.* To state a procedural due process claim based on an adverse employment decision, Plaintiffs first must establish a deprivation of a property interest.[2] Bishop v. Wood, 426 U.S. 341, 343-47 (1976); Bunger v. Univ. of Oklahoma Bd. of Regents, 95 F.3d 987, 990 (10th Cir. 1996); Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988). An employee must articulate how the law guaranteed his or her continued employment in the sense that he or she had a legitimate entitlement. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Neither the Constitution nor the Due Process Clause itself automatically creates a property interest; a property interest is created and its "dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Roth, 408 U.S. at 577.

　　　Restrictions on a public employer's right to terminate its employee at will differ from procedures for discharging an employee. Substantive restrictions on termination create property interests; procedural guarantees do not. Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983); *see* Bunger, 95 F.3d at 991 (guidelines in employee handbook providing for certain procedures in considering professor's reappointment did not create property right in reappointment). "Only a formal guarantee of continuing employment under color of state law . . . would have created a property interest." Bunger, 95 F.3d at 991.

---

　　　　[2] In Count One Plaintiffs allege that their liberty interests were also violated, but they have abandoned that claim.

The independent sources that may give rise to a property interest in continued employment vary. Property interests may be created by a state or federal statute, a municipal charter or ordinance, or an express or implied contract. Bishop v. Wood, 426 U.S. at 344; Perry v. Sindermann, 408 U.S. 593, 601-02 (1972); Carnes v. Parker, 922 F.2d 1506, 1509 (10th Cir. 1991). A collective bargaining agreement can provide the source of a property right in continued employment. *See* Dill v. City of Edmond, Oklahoma, 155 F.3d 1193, 1206 (10th Cir. 1998) (CBA provided that management may "discharge, demote and discipline employees for cause subject to the grievance procedure rights . . .."); Hennigh v. City of Shawnee, 155 F.3d 1249, 1255 (10th Cir. 1998) (CBA entered into pursuant to state law gave police officer property right in rank).

Defendants assert that Plaintiffs do not enjoy constitutional due process protections because with one-year contracts that had to be renewed each year, they had no legitimate expectation of continued employment, and thus no property rights. Defendants also refer to the language in the TVI Employee Handbook indicating there was "no commitment expressed or implied to renew or extend the employment of any employee." Def. Ex. A.2, § 3.03(A) at 12-13. Finally, Defendants contend there is neither a rule nor a statute that created a property interest in Plaintiffs' continued employment. Plaintiffs counter that the CBA, interpreted in light of New Mexico case law and TVI's Collective Bargaining Policy, gave them a reasonable expectation of continued employment. They also contend that the continuous policy of TVI has been not to terminate non-probationary employees without just cause.

13

I have already determined, due to a specific conflict, that the provisions in the employee handbook and faculty contracts relied upon by Defendants are superceded by the CBA. I must now determine if the CBA provides union members merely a procedure culminating in arbitration, or a substantive right to be terminated only for just cause. I begin with an examination of the most pertinent sections of the CBA:

### ARTICLE 10     EMPLOYEE RIGHTS

10.1 The Institute [TVI] reserves the right to investigate allegations of employee misconduct and poor performance.

10.2 An employee may be placed on administrative leave during an investigation involving the employee. Administrative leave shall be leave with pay.

10.3 During an employee investigation, no documentation related to the matter will be placed in the employee's official personnel file. The employee will be provided the opportunity to respond to charges prior to the imposition of disciplinary action.

10.4 An employee who believes that the employee has been unfairly or unjustly reprimanded, suspended without pay, demoted or terminated may file a grievance in accordance with the Agreement's grievance procedure.

. . .

10.10 The parties agree that all employees in the designated bargaining unit are entitled to all of the rights and privileges delineated in this Agreement. There shall be no rights implied beyond the specific terms of this Agreement and the Federation shall be exclusive representative for the representation of those rights.

Def. Ex. A.1 at 8, 11. The CBA "shall control" if any TVI "policy, regulation or

directive is in specific conflict with any of its provision[s] . . .." Id., Art. 5, sec. 5.1 at 3.

In my view, the language of Section 10.4, which follows on the heels of provisions for the investigation of and sanctions for employee misconduct and poor performance, and which gives employees the right to grieve their terminations and other adverse employment actions by the employer which they believe were "unfair" or "unjust," plainly means that all terminations must be "fair" and "just." This, I conclude, is a substantive right to continued employment absent a "fair" or "just" reason for TVI to take any of the specified adverse actions against an employee.

The New Mexico Supreme Court interpreted similar language in a CBA as creating a just cause standard of termination, even though it did not contain an express just cause provision. Jones v. Int'l Union of Operating Engineers, 72 N.M. 322, 383 P.2d 571 (1963). The CBA gave the employer the sole right to hire and maintain order and efficiency, as well as the right to promote, discipline and discharge employees, "provided that claims of discriminatory promotions and of wrongful or unjust discipline or discharges shall be subject to settlement as provided in [the grievance procedure of the CBA]." Id. at 327, 383 P.2d at 574. The company argued that this language only gave Jones the (procedural) right to "press his claim of unjust discharge through the grievance procedure," but the Supreme Court disagreed and held that the agreement contained a (substantive) "just cause" clause that prohibited the wrongful or unjust discharge of an employee:

We find in the language of the agreement no intention that an

15

individual employee be merely granted the right to invoke an empty grievance procedure under circumstances in which he has no contractual right. As we view the agreement, the parties expressed the plain intention that the employer should have the complete right to hire, to fire and to discipline its employees, except that it may not wrongfully or unjustly discharge an employee.

Id. at 328, 383 P.2d at 575. Thus, New Mexico case law strongly supports my conclusion that the language in Section 10.4 of the CBA in this case creates a "just cause" standard for the nonrenewal of Plaintiffs' contracts.

The arbitrator's decision, too, is consistent with the notion that the CBA creates a just cause standard for these nonrenewals. While not resolving what standard should be applied in the arbitration on the merits of Plaintiffs' grievances over their terminations,[3] the arbitrator's comments as quoted above in the section on the contract claims certainly lean heavily in the direction of a substantive right. Finally, by the TVI Governing Board's own Collective Bargaining Policy, employees given the right to organize and bargain collectively were defined broadly; excluded from the definition are employees "who have no reasonable expectation of continued employment . . .." Pl. Ex. 5 § 2(F) at 2. All these factors gave Plaintiffs an objectively reasonable expectation of continued employment. I conclude Plaintiffs had a property interest in their jobs that could not be

---

[3] The arbitrator cites Elkouri & Elkouri, How Arbitration Works, 4th Ed. at 652 for the proposition, which he puts in parentheses (indicating to me that he is not deciding), that "[w]idely accepted authority cites an abundant [sic] of cases which reflect that Arbitrators may even infer a requirement that "just cause" be the standard under which termination of employment is allowed under a CBA." Def. Ex. A.24 at 16 and n.2.

taken from them without due process.[4]

       *2. Qualified Immunity - Individual Defendants in Individual Capacity.*  The doctrine of qualified immunity protects public officials who are sued in their individual capacity.  Kentucky v. Graham, 473 U.S. 159, 166-67 (1985).  As long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," officials performing discretionary functions are shielded from personal liability.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The court should first determine whether a constitutional right has been deprived and then "proceed to determine whether that right was clearly established at the time of the alleged violation."  Wilson v. Layne, ___ U.S., ___, 119 S. Ct. 1692, 1697 (1999).  The plaintiff bears the burden on both issues.  Migneault v. Peck, 158 F.3d 1131, 1139 (10th Cir. 1998), *jt. vacated on other grounds,* 120 S. Ct. 928 (2000).

     For the law to be clearly established, the unlawfulness of the defendant's conduct must be apparent in light of preexisting law.  Armijo v. Wagon Mound Pub. Schs., 159 F.3d 1253, 1260 (10th Cir. 1998).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Unless both prongs of the test are satisfied, qualified immunity must be granted.  *See* Migneault, 158 F.3d at 1139.

_____

[4]   In their second motion to supplement, Plaintiffs seek to supplement the record with an arbitrator's decision in a grievance filed by Stella Montoya, in which the arbitrator concludes that TVI has the burden of establishing just cause for the teacher's termination.  The facts of that case differed from those of these Plaintiffs.  I have not considered that decision in reaching my conclusion, and the motion is moot.

Defendants argue that even if Plaintiffs were entitled to procedural due process rights, they are entitled to qualified immunity because Plaintiffs' property interest in their employment was not clearly established.  Plaintiffs respond only that the Loudermill decision[5] is over 12 years old, and clearly entitles employees to due process hearings. This response does not address whether Plaintiffs' property interest in their employment was clearly established.

In Greene v. Barrett, 174 F.3d 1136 (10th Cir. 1999) the court faced a similar situation as that presented here.  The court found that the plaintiff had a protected property right in continued employment pursuant to a Wyoming statute and that his due process rights had been violated because he had been demoted without cause and absent any process.  Id. at 1140-41.  The Tenth Circuit held, however, that the defendant was entitled to qualified immunity because neither the language of the statute nor any Wyoming case law clearly established a property interest under the factual scenario presented there.  Id. at 1142-43.

Given the conflicting language in the employee handbook and individual contracts, indicating, on the one hand, that Plaintiffs were at-will employees, and, on the other hand, my interpretation of the CBA, to the effect that Plaintiffs had a reasonable expectation of continued employment, I cannot say with certainty that Plaintiffs' entitlement to due process rights was clearly established.  The CBA was new the year

---

[5] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).

Plaintiffs were terminated and had never before been interpreted to apply in the case of nonrenewals. Even the arbitrator recognized this when he stated in his decision: "It is not surprising that the parties to a new collective bargaining process would have disagreement during the first years." Def. Ex. A.24 at 17. Plaintiffs have failed to carry their burden to show that their property rights under the CBA were clearly established at the time of their terminations. Therefore, I conclude that the officials are entitled to qualified immunity on the due process claim.

*3. Was Adequate Process Given?* Defendants contend that the grievance process invoked by Plaintiffs and the union pursuant to the CBA satisfied TVI's due process obligations. They argue that the concept of due process is flexible and that because TVI complied with the CBA grievance procedure, Plaintiffs were accorded all the process that was due. Plaintiffs respond that the ability to participate in an arbitration hearing long after the fact is not a substitute for a pretermination hearing. They argue that due process requires an employer to inform the employee of the reasons for termination prior to termination and that they have never been so informed.

"Due process requires that plaintiff have had an opportunity to be heard at a meaningful time and in a meaningful manner before termination. 'This requirement includes three elements: 1) an impartial tribunal; 2) notice of charges given a reasonable time before the hearing; and 3) a pretermination hearing, except in emergency situations.'" Langley v. Adams County, Colorado, 987 F.2d 1473, 1480 (10th Cir. 1993) (*quoting* Patrick v. Miller, 953 F.2d 1240, 1244 (10th Cir. 1992)). The Supreme Court

has held that the due process clause requires "'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (*quoting* Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972)). A brief, face-to-face meeting with a supervisor can satisfy the pretermination due process requirements of Loudermill, provided that it affords some notice of and opportunity to contest the grounds for termination. *See* Powell v. Mikulecky, 891 F.2d 1454, 1458-59 (10th Cir. 1989) (employee entitled to pretermination notice of charges against him, explanation of employer's evidence and opportunity to present his side of story); Seibert v. Univ. of Oklahoma Health Sciences Ctr., 867 F.2d 591, 599 (10th Cir. 1989) (employee knew reasons for termination and was given opportunity to present his side of story).

To be sure, a grievance procedure may satisfy due process requirements. However, even if TVI complied with the CBA grievance procedure in that (1) it gave pretermination notice to each Plaintiff of its decision not to renew their individual faculty contracts, (2) it processed Plaintiffs' grievances before their contracts expired, and (3) it participated in post-termination arbitration and mediation, which resulted in a settlement of the grievances, that compliance was insufficient to meet constitutional standards of due process. What was missing was any notice of the reasons for the terminations or any meaningful opportunity to contest the grounds for the terminations. Plaintiffs were left with their dukes up, swinging at empty space. This procedure did not satisfy due

process.[6]

The due process claim will not be dismissed.  However, the TVI officials will be dismissed from this claim in their individual capacities.

**C.  Exclusive Remedy and Primary Jurisdiction - All Claims.**  Defendants argue that all Plaintiffs' claims should be dismissed because the CBA's grievance and arbitration procedure provides the exclusive remedy for all employment-related claims, and because the TVI Labor Relations Board has primary jurisdiction over their claims.

*Exclusive Remedy.*  I will first examine whether the grievance procedure is the exclusive remedy for Plaintiffs' contract claims (breach of contract and breach of the implied covenant, Counts Ten and Eleven).  I will then turn to the federal statutory and constitutional claims under 42 U.S.C. § 1983.  These claims include the due process claim (all Plaintiffs, Count One), as well as various discrimination claims.  The discrimination claims include alleged discrimination on the basis of age and sex (Sally Fish, Count Two), and sexual orientation (Anne Waters, Count Three), as well as numerous retaliation claims based upon religion, speech, and association (Anne Waters, Count Three), race, color or national origin (Joanna Petridou-Fischer, Count Four), and union activities (Anne Waters, Count Three; Connie Callahan, Count Six; Wayne Sprong,

---

[6]  Plaintiffs move to strike as conclusory the affidavit of the union chief negotiator which asserts that "all eight of the grievants whose individual faculty employment were not renewed were afforded all substantive and procedural rights granted them by the collective bargaining agreement in the course of processing their grievances, as is reflected in the terms of the Settlement Agreement."  Aff. Broome, Def. Ex. A.25, ¶7 at 2-3.  This is not material to whether Plaintiffs were afforded constitutional due process, and I have not considered the affidavit in making my ruling.  The motion, therefore, is moot.

Count Seven).

For their argument that the grievance procedure is the exclusive remedy,

Defendants rely upon language contained in the TVI Collective Bargaining Policy, the

Public Employee Bargaining Act ("PEBA"), N.M. Stat. Ann. 1978 §§ 10-7D-1 to -7D-26

(1995 Repl. Pam.),[7] the CBA, the Settlement Agreement and New Mexico case law.

The TVI Collective Bargaining Policy states:

> Every agreement shall include a grievance procedure to be
> used for the settlement of disputes pertaining to employment
> terms and conditions and related personnel matters.  The
> grievance procedure shall provide for a final and binding
> arbitration.  The final determination shall constitute an
> arbitration award within the meaning of the Uniform
> Arbitration Act (Chapter 44, Article 7, N.M. Stat. Ann. 1978).
> The costs of any arbitration proceeding conducted pursuant to
> this section shall be shared equally by the parties.

Def. Ex. A.3 § 12(E) at 10.  This provision is identical to the PEBA, § 10-7D-17(F).[8]  In

accordance with this policy, the CBA provides a grievance procedure, and contains this

language:

> PURPOSE:  The purpose of this grievance procedure
> is to secure, at the lowest possible administrative level,
> equitable solutions to problems that may arise and are subject
> to this procedure.  *Unless otherwise prohibited by law, there
> shall be no other grievance or appeal procedure for members*

---

[7] As a public employer, TVI is subject to the PEBA.  The PEBA allows public employers to create local labor relations boards to assume all the duties and responsibilities of the Public Employee Labor Relations Board, § 10-7D-10(A).  TVI's Collective Bargaining Policy was adopted by resolution of its local board.  *See* Def. Ex. A.3 § 5 at 4.

[8] The underlying purpose of the PEBA is "to promote harmonious and cooperative relationships between public employers and public employees . . .."  § 10-7D-2.

> *of the bargaining unit other than that contained in this Article.*

CBA, Def. Ex. A.1 Art. 7, § 7.1 at 3 (emphasis added).

The Uniform Arbitration Act, referred to in the TVI Collective Bargaining Policy and the PEBA, expressly applies to arbitration agreements entered into by employers and employees or their representatives. N.M. Stat. Ann. 1978 § 44-7-1. The Arbitration Act provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable . . ..

Id. It is undisputed that the union was the exclusive bargaining agent for all Plaintiffs. It is also undisputed that arbitration proceeded pursuant to grievances filed by the union on behalf of each Plaintiff, eventually resulting in a final settlement by TVI and the union. The Settlement Agreement states:

> I. This Settlement Agreement sets forth the terms and conditions of an amicable settlement and a full accord and satisfaction of all claims and controversies between NMFT and TVI related to TVI's failure to renew the contracts of the eight faculty members.
>
> J. . . . NMFT and TVI intend to settle by this Settlement Agreement to the extent possible all matters between them relating to or arising out of the events occurring up to the date of this Settlement Agreement relating to the failure by TVI to renew the individual contracts of the eight faculty members, including resolution of the NMFT grievance, the individual grievances, and all issues related to the lawsuit . . ..

Settlement Agreement, Def. Ex. A.26 ¶¶ I, J at 2. The agreement provided reinstatement

23

for four of the Plaintiffs and a back pay fund to be shared equitably by all the grievants.

However, as a prerequisite to reinstatement or distribution of funds, each grievant was

given 21 days to execute and deliver to TVI a full release of TVI from any claims related

to their employment with TVI. The agreement provides that all the grievances "are

hereby withdrawn and satisfied." Id. ¶ 3 at 4. It further provides:

> 5. The parties specifically agree that the grievance procedure
> contained in the CBA is intended by them to provide the sole
> and exclusive remedy for the resolution of disputes of any
> nature relating to the application or interpretation of the CBA
> and the rights afforded the parties and members of the full
> time faculty thereunder.
> 6. The parties further agree that the NMFT and individual
> grievances filed by the NMFT and the individual faculty
> members have been processed in full accordance with the
> terms of the CBA, and the individual faculty members were
> afforded all procedural rights to which they were entitled
> under terms of the CBA.

Id. ¶¶ 5, 6 at 4-5.

The unmistakable intent of these documents, I find, is that any claims for breach of

the CBA (and other claims to the extent legally possible) be settled exclusively by the

CBA's grievance procedure. That procedure has been engaged and has resulted in a final

settlement. Plaintiffs have not proved that this exclusivity is "otherwise prohibited by

law." In fact, New Mexico law favors arbitration over litigation, Fernandez v. Farmer's

Ins. Co. of Arizona, 115 N.M. 622, 625, 857 P.2d 22, 25 (1993). "In order to promote

judicial economy through the use of arbitration, the finality of arbitration awards is

enforced by strict limitations on court review of those awards." Id.[9] Therefore, I conclude that the CBA grievance procedure is the exclusive remedy for the contract claims, and those claims must be dismissed.

A different standard exists, however, for the federal statutory and constitutional claims. For one thing, exhaustion of administrative remedies is never required before filing suit under 42 U.S.C. § 1983. Edwards v. Balisok, 520 U.S. 641, 649 (1997); Patsy v. Board of Regents of State of Florida, 457 U.S. 496, 501 (1982). Filing a union grievance and arbitration of employment claims under a CBA neither bars a plaintiff from bringing a Title VII action in court, Alexander v. Gardner-Denver Co., 415 U.S. 36, 47-49 (1974), nor is it a prerequisite to bringing a Title VII claim in court, Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1452-53 (10th Cir. 1997), *aff'd in part and rev'd in part on other grounds*, 158 F.3d 1372 (10th Cir. 1998).

Furthermore, the standard for an effective union-negotiated waiver of the right to a judicial forum for federal claims of employment discrimination is quite stringent. *See* Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, __, 119 S. Ct. 391, 396 (1998) (waiver must be "explicitly stated" in language that is "clear and unmistakable"). Also, the CBA must make compliance with the federal anti-discrimination statute a contractual commitment that would be subject to the arbitration clause. *See* id. at 397.

The alleged waiver is that contained in Art. 7, § 7.1 of the CBA, quoted above.

---

[9] Under federal law, which is not directly applicable here because Plaintiffs are public employees, there is a presumption in favor of arbitration. Contract claims like the ones asserted here are preempted.

The CBA prohibits discrimination in this language:

> NON-DISCRIMINATION  The parties to this Agreement (the
> Federation and the Institute) agree that neither the Federation
> nor the Institute's respective policies or activities will
> discriminate against any employee based upon race, age,
> gender, color, national origin, religion, ancestry, marital
> status, sexual orientation, Federation or non-Federation
> affiliation, veterans status or disability.

CBA, Def. Ex. A.1 Art. 8 at 7.

The CBA's alleged waiver of federal claims does not meet the <u>Wright</u> standard.
Although the non-discrimination clause includes most if not all the types of
discrimination alleged in the amended complaint, there is no explicit commitment to
comply with the anti-discrimination statutes, no incorporation of the statutes into the
CBA, and no language that clearly and unmistakably waives employees' right to a federal
forum for these non-contractual disputes.  *See* <u>Brown v. ABF Freight Sys, Inc.</u>, 183 F.3d
319, 321-23 (4th Cir. 1999) (general arbitration clause and general nondiscrimination
clause insufficient to effect waiver of judicial forum).

TVI attempts to save the day with the affidavit of Paul Broome, the union chief
negotiator, which states:

> It was intended by the parties that members of the
> bargaining unit who believe that they have been unfairly or
> unjustly terminated on any ground be required to submit the
> issue exclusively through the grievance and arbitration
> procedure of the CBA and that in the course of considering
> the claim, the arbitrator is empowered to consider any claim
> by NMFT or the employee (grievant) that the employee's
> termination was unfair or unjust, *including a claim it was in
> violation of federal or state statutory or constitutional*

> *provisions.*

Aff. Broome, Def. Ex. A.25 ¶6 at 2 (emphasis added). Plaintiffs have moved to strike this affidavit as conclusory or to allow them to conduct discovery on the issue of the intent of the union and TVI. Under Wright, however, the question is one of interpretation of the explicit terms of the contract. The unstated intent of the parties is not relevant. Therefore, I do not consider the Broome affidavit in making my ruling, and the motion to strike is moot.

Similarly, in their first motion to supplement, Plaintiffs seek to add to the record an affidavit by a TVI faculty member, Stella Montoya, to support their assertion that they need discovery on the issue of the intent of TVI and the union on whether the CBA is the exclusive remedy. I need not consider this affidavit for similar reasons as I disregard the Broome affidavit. This motion is also moot.

I conclude that the CBA grievance procedure is not the exclusive remedy for any of Plaintiffs' federal claims.

*Primary Jurisdiction.* Defendants next argue that the Court should invoke the doctrine of primary jurisdiction and dismiss Plaintiffs' claims so they can first be adjudicated by the TVI Labor Relations Board, citing New Mexico Assoc. for Retarded Citizens v. State of New Mexico, 678 F.2d 847, 850 (10th Cir. 1982) and Mountain States Natural Gas Corp. v. Petroleum Corp. of Texas, 693 F.2d 1015, 1018 (10th Cir. 1982). The doctrine of primary jurisdiction, like the closely-related doctrine of exhaustion of remedies, promotes "proper relationships between courts and administrative

27

bodies through a policy of suspending judicial consideration pending agency action."
New Mexico Assoc. for Retarded Citizens, 678 F.2d at 850. Primary jurisdiction
mandates "judicial restraint: disputes properly pressed in either the courts or
administrative bodies are to be first decided by an agency specifically equipped with
expertise to resolve the regulatory issues raised." Id. The principal criterion in deciding
whether the doctrine is applicable "is judicial appraisal of need or lack of need for resort
to administrative judgment." Id. at 851. The only enforcement tool available to the
agency involved in New Mexico Assoc. for Retarded Citizens was a cutoff of federal
funding, a "narrow purse-string discipline" that was held not to afford plaintiffs (a class
of handicapped children in need of special education services) "an immediate and
effective means of vindicating their rights by procurement of necessary educational
services." Id.

The argument goes as follows. As a public employer, TVI is subject to the New
Mexico Public Employee Bargaining Act ("PEBA"), N.M. Stat. Ann. 1978 §§ 10-7D-1
to -26 (1995 Repl. Pam.). Under this statutory scheme, public employers may create
local labor relations boards to assume the duties of the Public Employee Labor Relations
Board. Id., § 10-7D-10(A). The local boards have the power to enforce the provisions of
the PEBA and local collective bargaining resolutions through the imposition of
appropriate administrative remedies. Id., § 10-7D-11(E). TVI created the TVI Labor
Relations Board, which has the authority to enforce compliance with the CBA. Id.,
§§ 10-7D-19(H). The Board has the specialized expertise to resolve disputes between

28

TVI and its full-time faculty.  However, neither Plaintiffs nor the union filed a charge with the Board charging any Defendant with engaging in prohibited labor practices.

As discussed above, I have determined that the contract claims will be dismissed. For the same reasons discussed under the exclusive remedy section, I conclude that the § 1983 claims are not subject to dismissal.

**D. Eleventh Amendment.**  Defendants contend that Plaintiffs' claims against TVI itself and against the individual Defendants in their official capacities are barred by the Eleventh Amendment.  The Eleventh Amendment to the United States Constitution provides that federal judicial power does not extend to a suit by a citizen against a state. It generally shields a state from suit in federal court without the state's consent.  Duke v. Grady Mun. Schs., 127 F.3d 972, 974 (10th Cir. 1997).  The question is whether TVI is an "arm of the state."  This is a question of federal law that is answered by considering provisions of state law that define the entity's character.  Id. at 975.

A defendant asserting the affirmative defense of Eleventh Amendment immunity has the burden to show that the federal court lacks jurisdiction on this ground.  *See* Christy v. Pennsylvania Turnpike Comm'n, 54 F.3d 1140, 1144  (3d Cir. 1995); Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 734 n.5 (7th Cir. 1994); ITSI TV Prods. v. Agricultural Ass'ns, 3 F.3d 1289, 1291 (9th Cir. 1993).  *See also* Mancuso v. New York State Thruway Auth., 86 F.3d 289, 292 (2nd Cir. 1996) (defendant must "demonstrate that it is more like 'an arm of the State'").

In New Mexico, local school districts are local governing bodies, and not arms of

29

the state.  <u>Duke</u>, 127 F.3d at 981; <u>Daddow v. Carlsbad Mun. Sch. Dist.</u>, 120 N.M. 97, 105-06, 898 P.2d 1235, 1243-44 (1995).  The University of New Mexico, on the other hand, is an arm of the state, <u>Buchwald v. Univ. of New Mexico Sch. of Medicine</u>, 159 F.3d 487, 494 n.3 (10th Cir. 1998), as is the New Mexico School of Mines.  <u>Korgich v. Regents of the N.M. Sch. of Mines</u>, 582 F.2d 549, 551 (10th Cir. 1978).

The court looks first at the degree of autonomy given to the entity by examining the characterization of the entity by state law and the extent of guidance and control exercised by the state over the entity.  Second, the court examines the extent of financing the entity receives independent of the state treasury and the ability of the entity to provide for its own financing.  If a money judgment in the case would be satisfied out of the state treasury, the entity is immune from suit.  *See* <u>Duke</u>, 127 F.3d at 974.  With these principles in mind, I turn to an analysis of New Mexico law as it relates to TVI.

Technical and vocational institutes are not included in the list of state educational institutions in the New Mexico Constitution.  However, for purposes of public finances, state statute does characterize them as "state educational institutions."[10]  *See* N.M. Stat. Ann. § 6-17-1.1 (1999 Repl. Pam.).  This factor weighs in favor of immunity.

Technical and vocational institutes are governed by the Technical and Vocational Institute Act, N.M. Stat. Ann. 1978 §§ 21-16-1, *et seq.*  (1996 Repl. Pam. & 1999 Supp.).

---

[10]  Other institutions characterized as "state educational institutions" include the University of New Mexico (and all its branches), the New Mexico Institute of Mining and Technology, the Northern New Mexico State School, the New Mexico Military Institute, the New Mexico School for the Deaf, the New Mexico School for the Visually Handicapped, the San Juan College, the New Mexico Junior College and the Santa Fe Community College.

The Albuquerque TVI was formed pursuant to §§ 21-16-3 and -4, which were repealed in 1998. Under those statutes, property owners could petition the state board of education for an election to form a district. Local school boards were involved in the process. They were charged with declaring "the organization of the ........ technical and vocational institute district." § 21-16-4 (repealed).[11] The blank in the quote presumably is for the specific name of the district. (In this case the blank would be filled by the word "Albuquerque.") Technical and vocational institute districts are geographically defined, and are controlled by boards whose members are elected and who must reside within the district boundaries. § 21-16-5.1(A) (1999 Supp.) Here there is a similarity to elections for local school boards. § 22-5-1 and -1.1 (1998 Repl. Pam.). Vacancies on the board are filled in the same manner as vacancies on local school boards. § 21-16-5.1(E) (1999 Supp.). A technical and vocational district may be dissolved by the voters in a special election. § 21-16-15 (1999 Supp.). Like local school boards, the TVI board exercises broad power to determine the financial and educational policies of the institute, to select a president and other administrators for the institute as well as instructional staff and other personnel, to fix rates for fees and tuition, to issue degrees and certificates to the students, to accept gifts, receive aid from federal and other sources and to own and sell property and equipment. § 21-16-6 (1996 Repl. Pam.). Furthermore, the board has the power to

---

[11] Current law provides that "[t]here shall be no new technical and vocational institute branch campus or off-campus instructional center created after January 1, 1998 unless specifically created by the legislature." § 21-16-3.1 (1999 Supp.).

issue bonds for building projects.  §§ 6-17-1, -2, and -3.  Issuance is contingent upon

approval by the state board of finance.[12]  § 6-17-9.  This control factor weighs against

immunity.

TVI asserts that it should be construed as an arm of the state because "TVI

receives approximately 50% of its funds from the state."  Reply at 11.  In contrast,

however, local school districts statewide receive 96% of their funds from the state and are

not considered arms of the state.  Duke, 127 F.3d at 976.

Funding for TVI comes from a combination of tuition and fees, state general

funds, county property taxes and bond issues.  § 21-16-10 (1999 Supp.).  The Tenth

Circuit and the New Mexico Supreme Court have noted, however, that local school

district bond obligations may not be a charge against or a debt of the state.  Duke,

127 F.3d at 976 and n.8; Daddow, 120 N.M. at 103-04, 898 P.2d at 1241-42; N.M. Stat.

Ann. 1978 § 22-19-16(B) (1998 Repl. Pam.).  The same is true for obligations created by

technical and vocational districts. § 6-17-12 (1999 Repl. Pam.).[13]  This fiscal

independence factor weighs against immunity.

TVI also asserts that "TVI is not insured against the claims made in this lawsuit.

---

[12]  A provision authorizing the refunding of bonds by technical and vocational institute boards was repealed in 1999. *See* § 21-16-11.1 (1996 Repl. Pam.), repealed by Laws 1999, ch. 219 § 21, effective July 1, 1999 (1999 Supp.)

[13]  The statute reads:  "No obligation created hereunder shall ever be or become a charge or debt against the state of New Mexico, but all such obligations, including principal and interest, shall be payable solely from the net income derived from the buildings, facilities and improvements as in this act [6-17-1 to 6-17-13 . . .] specified . . ..  § 6-17-12.

As a result, state funds are at risk if a judgment is entered against TVI." Reply at 11.

The proper inquiry, however, is "legal liability for a judgment, rather than practical, or

indirect, impact a judgment would have on a state's treasury." Duke, 127 F.3d at 981.

TVI has presented no evidence that the state of New Mexico is legally liable for a

judgment against a technical and vocational institute under state law. Therefore, this

salient factor does not weigh in favor of immunity for TVI as an arm of the state.

I conclude that TVI has not met its burden to show that it is entitled to the defense

of Eleventh Amendment immunity that is available to the state and arms of the state.

**E. Claims of Retaliation For and Neglect To Protect Under 42 U.S.C. §§ 1985
and 1986.** Finally, Defendants argue that Plaintiffs' claims for obstruction of justice

under 42 U.S.C. § 1985(2) should be dismissed for failure to state a claim and that the

claims under 42 U.S.C. § 1986 should be dismissed because they are derivative of the

invalid 1985(2) claims. Plaintiffs allege in Count Eight that Defendants conspired to

retaliate against them for instituting this federal lawsuit by refusing to interview or hire

any of them for available positions at TVI. In Count Nine, Plaintiffs allege Defendant

Sanchez, as president of TVI, had the power to prevent the wrongful retaliation alleged in

Count Eight, but he and TVI neglected or refused to do so, in violation of 42 U.S.C.

§ 1986.

To state a claim for a conspiracy to obstruct justice under clause B of § 1985(2),[14]

---

[14] Clause B of 42 U.S.C. § 1985(2) provides an action for damages: "If two or more persons in
any State or Territory conspire . . . to injure such party or witness [in any court of the United States] in his

the following elements must be alleged: (1) a conspiracy by the defendants; (2) to injure

a party or witness in his or her person or property; (3) because he or she attended federal

court or testified in any matter pending in federal court; and (4) resulting in injury or

damages to the plaintiff. Portman v. County of Santa Clara, 995 F.2d 898, 909 (9th Cir.

1993).

Defendants argue that Plaintiffs have alleged insufficient facts to satisfy the first

element of conspiracy. Specifically, they contend that Plaintiffs have failed to allege a

meeting of minds or that the Defendants acted in concert.

To survive a summary judgment motion on a cause of action for civil conspiracy,

there must be evidence of the combination of two or more persons acting in concert.

Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir. 1990). A plaintiff must

establish, either by direct or circumstantial evidence, a meeting of the minds or agreement

among the defendants. Id. at 1231. Plaintiffs respond that because discovery has been

stayed they are unable to establish these factual matters, and they contend that their

allegations are sufficient to survive a motion to dismiss. The Tenth Circuit has

recognized that even though more than mere conclusory allegations are required to state a

valid claim, the nature of conspiracies often makes it impossible to provide details at the

pleading stage, and that the Court should allow access to the discovery process rather

than dismiss the complaint. Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th

---

person or property on account of his having so attended or testified, . . ."

Cir. 1994).  *See also* <u>Candelaria v. City of Albuquerque</u>, 768 F.2d 1207, 1209-1210 (10th

Cir. 1985) (single allegation that defendants acted "in concert" sufficient to state claim

for civil conspiracy under 42 U.S.C. § 1985).

Plaintiffs allege that "Defendants conspired together and with other persons

including employees and non employees of the TVI (whose names are not known to

Plaintiffs)" to retaliate against them for filing this lawsuit by "refusing to interview any

Plaintiff for any available position," and that "Defendant TVI has hired individuals who

were not as qualified as Plaintiffs . . . and TVI has after advertising for positions refused

to hire any applicant when it was obvious that a Plaintiff herein was the most qualified,

all in retaliation for Plaintiffs' . . . lawsuit."  Am. Compl. ¶¶ 92, 90, 91.  Although I am

concerned about the lack of specificity as to which Defendants were allegedly involved in

a conspiracy, I conclude that Plaintiffs' allegations of conspiracy are sufficient to

withstand dismissal at this time.  Discovery will provide both sides with the necessary

information to develop the specifics of this claim and the defenses to it.

Defendants also contend that there is no cause of action under § 1985(2) for

merely instituting a federal lawsuit.  There can be no actionable claim because no

Plaintiff has yet "attended" or "testified" in this action.  Plaintiffs cite controlling Tenth

Circuit precedent that squarely holds that the protection afforded by § 1985(2) includes

instituting a suit in federal court.  <u>Wright v. No Skiter, Inc.</u>, 774 F.2d 422, 425-26

(10th Cir. 1985).  In their reply brief, Defendants argue that I should follow contrary

precedent in the Fifth Circuit because the Tenth Circuit "relied on" a vacated opinion

from the Fifth Circuit in making its ruling in <u>Wright</u>.  *See* <u>Kimble v. K.J. McDuffy, Inc.</u>, 623 F.2d 1060 (5th Cir. 1980), *vacated* 648 F.2d 340 (5th Cir. 1981) (*en banc*).  Where there is a split in the circuits on an issue of law, I must, of course, follow controlling precedent in this circuit.  The § 1985(2) and § 1986 claims will not be dismissed.

**NOW, THEREFORE, IT IS ORDERED** that Defendants' Motion To Dismiss or For Summary Judgment is hereby GRANTED IN PART and DENIED IN PART.

1. The individual Defendants are entitled to qualified immunity and are hereby dismissed from Count One in their individual capacities.

2. The contract claims, Counts Ten and Eleven, are hereby DISMISSED.

3. Count Five is hereby DISMISSED.

4. In all other respects, the motion is DENIED.

**IT IS FURTHER ORDERED** that the remaining motions to supplement and to strike are hereby DENIED AS MOOT.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:  Steven K. Sanders, Albuquerque, N.M.

Counsel for Defendants:  Robert P. Tinnin, Jr. and Stanley K. Kotovsky, HINKLE, COX, EATON, COFFIELD & HENSLEY, Albuquerque, N.M., and John P. Eastham, KEMP, SMITH, DUNCAN & HAMMOND, Albuquerque, N.M.